***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman. Although plaintiff filed a notice of appeal from the Deputy Commissioner's Opinion and Award, plaintiff failed to file a Form 44 or brief before the Full Commission in violation of N.C. Gen. Stat. §97-85 and Rule 701(2) of the N.C. Workers' Compensation Rules. However, it appearing that neither party filed a brief or a motion to dismiss, the Commission waived oral argument and enters the following Opinion and Award which reverses in part and affirms in part the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. An employer-employee relationship existed between the employee and employer on or about July 8 and 9, 2000, and the parties are subject to and bound by the Workers' Compensation Act.
4. American Home Assurance Company was the carrier on the risk.
5. The following exhibits were entered into the evidence of record at the hearing before Deputy Commissioner Chapman:
a. Plaintiff's Exhibit 1 — Form 18
b. Plaintiff's Exhibit 2 — handwritten statement of Sarina Rice, March 21, 2001
c. Plaintiff's Exhibit 3 — handwritten statement of Vanessa White
d. Defendants' Exhibit 2 — exit interview
e. Defendants' Exhibit 3 — OSHA log 2000
f. Defendants' Exhibit 4 — request for leave of absence
g. Defendants' Exhibit 6 — time clock report
h. Defendants' Exhibit 7 — medical information statement
i. Defendants' Exhibit 8 — patient information statement of Dr. Maxwell dated August 8, 2000
6. The issues before the Commission are whether plaintiff sustained a compensable injury by accident in the course and scope of her employment on July 8 or 9, 2000; and if so to what medical benefits or other compensation is she entitled; and did plaintiff's failure to give notice under N.C. Gen. Stat. § 97-22 bar plaintiff's right to recover compensation and other benefits.
 ***********
Based upon all of the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was forty-eight years old at the time of the hearing before Deputy Commissioner Chapman. Plaintiff is a high school graduate with some additional college training, and began working for defendants in July 1994 at a Sam's Club store in Raleigh. Plaintiff subsequently transferred to defendants' Asheville store where she was working on July 8, 2003. Her job involved working at the café within the store.
2. Plaintiff had a 22 year history of back pain, but did not need regular medication for her symptoms. Dr. Heather Spencer of Asheville Family Health Center had treated plaintiff since November of 1997 for hypertension, asthma, sinusitis, anxiety and complications of allergic rhinitis. Dr. Spencer testified that she had not treated plaintiff for chronic back pain.
3. In April 2000, plaintiff took a leave of absence due to the death of her father and the fact that her mother, who had dementia, had moved in with her. Plaintiff returned to work for several days in June and then was out with pneumonia. Plaintiff was released to return to work on Friday, July 7, 2000. Plaintiff returned to work for defendants on July 8, 2000.
4. When plaintiff went back to work on July 8, 2000, she advised Elliott Nailen, the store manager, that she was only going to work a two-week notice period. While on her leave of absence, plaintiff became qualified to drive a school bus and had begun working for the local school system. Plaintiff planned to return to work as a bus driver when school reopened in August.
5. Plaintiff filed a claim for an injury occurring on Sunday, July 9, 2000, her second day back at work. Plaintiff testified that she was injured on the day she returned to work, which in fact she later realized was July 8, 2000, not July 9, 2000.
6. Plaintiff was instructed to stock bag-in-a-box drinks on July 8, 2000. As plaintiff lifted a bag-in-a-box of soft drink syrup weighing fifty-five pounds, she felt a snap in her lower back. She told her co-workers she could not continue with the stocking activity and had difficulty completing the shift but did not report the injury to defendants. Plaintiff testified that defendants had a contest that involved a competition among the stores. The store with the highest number of days since a reported accident received monetary compensation for its employees. Plaintiff felt she had pulled a muscle and did not have a serious injury and did not want to report an injury because of the contest.
7. Although there was some confusion about the date of the incident, plaintiff did lift a bag-in-a-box of soft drink syrup weighing fifty-five pounds at work and felt some back pain. She mentioned the pain to a couple of her coworkers but did not report the injury. After she went home that day, she moved some furniture which caused some sort of additional symptoms in her back. On Monday July 10, 2000, plaintiff woke up with such severe pain that she was unable to go to work. She called the store early that morning and spoke to Mr. Nailen. Although plaintiff told him that she was unable to come to work that day, she did not tell Mr. Nailen that she had hurt her back at work. Plaintiff's testimony to the contrary is not accepted as credible.
8. Plaintiff first received medical treatment on July 14, 2000 from a physician's assistant at Asheville Family Health Center where plaintiff regularly received medical care. Due to a computer malfunction, the office notes from this visit were deleted, so there is no information available from that visit except that plaintiff was given an excuse to be out of work that week.
9. Plaintiff did not return to work the following week and by July 14, 2000 informed management at the store that she would be terminating her employment in order to take care of her mother at home.
10. Consequently, Mr. Nailen completed and signed an exit interview form. Plaintiff signed the form on July 25, 2000. When she went to the store for the exit interview, there was no notation on the interview report by Mr. Nailen that plaintiff had an injury, but he testified he does not remember the exit interview. Mr. Nailen testified that if an injury had not been reported in writing, he would not necessarily have made a notation of it.
11. Plaintiff went to Dr. Andrew Rudins, a physiatrist at Southeastern Sports Medicine. She reported on the patient intake sheet there that she had not been hurt at work but that she had hurt herself moving furniture. However, when plaintiff spoke to Dr. Rudins, she also told him about lifting the box of drink syrup. Plaintiff described pain from her left low back radiating down her left leg to her knee and indicated that her leg tended to give way. Dr. Rudins ordered an MRI and gave her an injection. The MRI could not be scheduled until a later date.
12. On July 27, 2000, plaintiff presented to the emergency room of Memorial Mission Hospital screaming in pain, unable to tolerate any position and complaining of spasms in her leg.
13. Plaintiff was examined at the hospital by both Dr. Allen W. Lalor and Dr. Gary A. Curran. Plaintiff told the doctors about the incident moving furniture at home and the incident at work because she was not sure when the injury had occurred since the severe pain did not occur until July 10, 2000, several days after the work incident.
14. Dr. Curran admitted plaintiff to the hospital for pain management.
15. On July 28, 2000, plaintiff had an MRI which showed disc protrusions at multiple levels in her lumbar spine. Dr. Keith M. Maxell, an orthopedic surgeon, was then consulted and his physician's assistant examined plaintiff on July 29, 2000. Dr. Maxwell felt that plaintiff's symptoms stemmed from a disc herniation at L3-4, and he recommended surgery.
16. Dr. Maxwell performed surgery on plaintiff to decompress the L3-4 interspace on July 30, 2000. Dr. Maxwell stated and the Commission finds that this first surgery was causally related to the lifting injury on July 8, 2000.
17. On August 8, 2000, plaintiff reported significant relief of her preoperative symptoms. She also stated on the patient information sheet dated August 8, 2000 that her condition was not due to an injury at work, and she filed the medical bills with her health insurance coverage she had through the school system. Her condition improved further and Dr. Maxwell referred her to physical therapy.
18. On September 12, 2000, plaintiff returned to Dr. Maxwell with complaints of a new pain in her right hip and leg that was different from her previous pain symptoms.
19. On October 31, 2000, Dr. Maxwell ordered another MRI and then an epidural block at T12-L1, a different level than the one on which Dr. Maxwell operated in July. The block provided plaintiff with significant relief.
20. Plaintiff returned to work for the school system in the fall of 2000, although the date she returned to work was not clear from the evidence. She continued working until spring of 2001.
21. On February 28, 2001, plaintiff went back Dr. Maxwell's office and reported that her symptoms returned during the previous three week period. She then underwent another MRI which Dr. Maxwell interpreted as showing a large disc herniation at T12-L1.
22. On March 14, 2001, Dr. Maxwell recommended surgery and, even though the operation was very complicated, plaintiff consented.
23. On April 9, 2001, Dr. Maxwell and Dr. Thomas Eisenhauer performed surgery.
24. Following the operation, plaintiff, a smoker, had problems with pleural effusion which was slow to resolve. However, except for an incisional hernia, she gradually improved and was able to return to work in August, 2001.
25. Plaintiff continued working until Dr. Eisenhauer performed surgery on September 24, 2001 to repair the hernia.
26. Both Dr. Eisenhauer and Dr. Maxwell subsequently indicated that plaintiff could return to work, but she did not believe she was able to work.
27. Dr. Maxwell sent plaintiff to Dr. Andrew Rudins for an evaluation regarding permanency, and Dr. Rudins examined her on December 11, 2001. He recommended physical therapy to help improve her functional status and released her at maximum medical improvement to return to work effective January 3, 2002.
28. Plaintiff returned to Dr. Rudins on January 8, 2002 and reported that she had tried to return to work but that the attempt had significantly exacerbated the pain in her low back, hip and knee. On examination, her left knee and ankle reflexes were diminished, so Dr. Rudins ordered a CT/myelogram and took her out of work. There were disc protrusions at multiple levels on the CT scan, so he subsequently performed nerve testing and then referred her back to Dr. Maxwell.
29. Dr. Maxwell examined plaintiff on February 5, 2002 and ultimately recommended surgery to again decompress at L3-4. Dr. Maxwell performed the operation in February 2002 following which plaintiff reported the pain had significantly improved.
30. Plaintiff was given an out of work note for 6 weeks on March 5, 2002 and taken off medication.
31. Apparently plaintiff did well after the surgery until April 16, 2002 when she returned with a new pain in her left hip and lateral thigh which was unbearable. Dr. Maxwell ordered another MRI which he interpreted as showing a disc herniation at L4-5 with a free fragment. Dr. Maxwell recommended another operation which he performed on May 2, 2002.
32. Following this operation, plaintiff developed serosanguineous drainage, which continued for several months.
33. Plaintiff continued to experience back pain after this operation and Dr. Maxwell admitted that plaintiff probably had settling of the discs in view of the numerous back operations she had undergone.
34. Plaintiff's leg pain improved but she continued to experience back pain.
35. Plaintiff remained under Dr. Maxwell's care until his testimony was taken on August 21, 2002. At the time of Dr. Maxwell's deposition, plaintiff had recently fallen down a flight of steps at home and sustained fairly serious injuries for which Dr. Maxwell was treating her.
36. At his deposition Dr. Maxwell was unable to causally relate plaintiff's current medical condition in her lumbar and lower thoracic spine to the July 8, 2000 lifting incident. Dr. Maxwell believed that plaintiff's back problems after September 12, 2000 were related to preexisting medical conditions and he was unable to state with any degree of medical certainty that the July 2000 lifting incident significantly aggravated her underlying disc bulges at levels other than the first herniation at L3-4 on which he operated.
37. Dr. Rudins agreed with Dr. Maxwell that all of plaintiff's disc protrusions were not causally related to the lifting injury at work. However, it was Dr. Rudins opinion that plaintiff's thoracolumbar pain which required subsequent surgery could be attributed to the lifting injury.
38. The Commission gives greater weight to the causation opinions of Dr. Maxwell than to those of Dr. Rudins, since Dr. Maxwell is a board-certified orthopedic surgeon, was plaintiff's treating physician for a longer period of time and performed all of the back surgeries. Therefore, the Commission finds that as of the September 20, 2000 appointment with Dr. Maxwell and after plaintiff returned to work for the school system in early fall 2000, the back conditions for which plaintiff received treatment were not causally related to the compensable lifting incident on July 8, 2000.
39. Plaintiff sustained a specific traumatic incident of the work assigned on July 8, 2000 while lifting a box of soft drink syrup at defendants' store. Although plaintiff failed to give defendants notice of her injury by accident in a timely manner, the Commission accepts as credible and reasonable plaintiff's explanation for her delay in giving notice to her employer. Although defendants presented testimony at the Deputy Commissioner hearing about the employer's policies for reporting injuries on the job, the evidence fails to show by its greater weight that defendants were prejudiced by plaintiff's delay.
40. As the result of the compensable injury by accident, plaintiff was unable to earn the same or greater wages in her regular employment or in any other employment from July 9, 2000 through September 12, 2000.
41. Dr. Rudins assigned to plaintiff a 20% permanent impairment rating based upon the T12-L1 surgery and a 10% rating for the L3-4 disc herniation, which he combined for a total impairment rating of 28% of the back. However, at his deposition Dr. Rudins stated that since plaintiff had undergone additional surgery since he assigned the ratings, these ratings were subject to change. In addition, it is unclear from the medical evidence what portion of the 10% rating for the L3-4 herniation is attributable to the first surgery performed by Dr. Maxwell, which is the only surgery causally related to the compensable injury by accident.
42. The parties did not stipulate as to plaintiff's average weekly wage and defendants failed to submit a Form 22 wage chart. Therefore, based upon the Form 18 in the evidence of record, the Commission finds that plaintiff's average weekly wage was $347.00, which yields a compensation rate of $231.34.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On July 8, 2000, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendants in that she sustained a back injury as the result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff did not report the injury to her employer until approximately nine months later. However, plaintiff provided reasonable excuse for the delay in reporting and defendants were not prejudiced thereby. Therefore, plaintiff is entitled to receive benefits under the Workers' Compensation Act for the injury in question. N.C. Gen. Stat. § 97-22.
3. As the result of the compensable injury by accident, plaintiff is entitled to receive temporary total disability compensation at the rate of $231.34 for the period July 9, 2000 through September 12, 2000, subject to a deduction for any wages received from the school board during that period of time. N.C. Gen. Stat. § 97-29.
4. After September 12, 2000 any disability plaintiff may have incurred was not causally related to her compensable injury by accident and therefore plaintiff is entitled to no further compensation. Id.
5. As a result of the compensable injury by accident, plaintiff is entitled to payment by defendants of the medical treatment incurred by plaintiff up to but not including Dr. Maxwell's treatment on September 12, 2000. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee awarded below, defendants shall pay plaintiff temporary total disability compensation at the rate of $231.34 per week for the period July 9, 2000 through September 12, 2000. This amount is subject to a credit for any wages earned during this period. In that this compensation has accrued, it shall be paid in a lump sum.
2. A reasonable attorney's fee of 20% of the compensation awarded above is approved and shall be deducted from the sums due plaintiff and paid directly to plaintiff's counsel.
3. Defendants shall pay for all medical expenses incurred as a result of the compensable injury by accident.
4. In that the evidence is unclear as to the permanency rating, if any, to plaintiff's back as a result of the first surgery, this matter is reserved for later determination. In the event the parties are unable to agree upon the rating, the parties may request a hearing on this matter.
5. Defendants shall pay the costs due the Commission.
This the 24th day of February 2004.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER
LKM/kjd